Edwin J. BLECKER, Petitioner,

v.

David L. KOFOED and Eugene F. Costello (By Virtue of Foreclosure of Attorneys' Lien), Respondents.

No. 82SC74.

Supreme Court of Colorado, En Banc.

Nov. 29, 1983.

Kelly, Haglund, Garnsey & Kahn, Norman D. Haglund, Denver, for petitioner.

David L. Kofoed, Eugene F. Costello, Denver, for respondents.

Cooper & Kelley, William G. Berge, John J. Flynn, Jr., Daniel R. Christopher, Denver, amicus curiae.

LOHR, Justice.

We granted certiorari to review a decision of the Colorado Court of Appeals holding that a "stay" issued by the trial court did not extend the time for filing a motion for a new trial. See *Kofoed v. Blecker,* 644 P.2d 74 (Colo.App.1981). We disagree and therefore reverse the judgment of the court of appeals.

An acquaintance with the events leading up to the issuance of the stay order is important to place the issue in context. The respondents, David L. Kofoed and Eugene F. Costello, are attorneys who represented Kopy Kats Denver, Inc. (Kopy Kats) in obtaining a judgment against the petitioner, Edward J. Blecker, in the amount of $153,722.66 in the District Court for Arapahoe County on December 10, 1970. In 1979 Kofoed and Costello foreclosed their attorneys' lien for services rendered to Kopy

Kats, obtained a $76,892.33 interest in the Kopy Kats judgment, and were awarded judgment in their own name against Blecker in that amount. See section 12–5–119, C.R.S.1973 (1978 Repl.Vol. 5). When the respondents began garnishment proceedings to enforce their judgment, Blecker moved for cancellation of that judgment and of the underlying $153,722.66 judgment in favor of Kopy Kats, contending that the Kopy Kats judgment had been discharged in bankruptcy several years before Kofoed and Costello foreclosed their attorneys' lien. After considering evidence and argument, the trial court denied the motion to cancel the judgments for reasons not relevant to the present dispute.[1]

Immediately after issuing that oral ruling from the bench, the court asked, "Counsel, would you like to have a stay until you have an opportunity to pursue the matter further?" When counsel for Blecker responded that they would like a thirty-day stay and the respondents stated they had no objection, the court ruled, "A 30-day stay will be granted."

Twenty-two days later, after the fifteen-day period allowed by C.R.C.P. 59(b) for filing a motion for a new trial under C.R.C.P. 59(a) had elapsed, Blecker filed a motion for reconsideration or, in the alternative, for a new trial. The district court reopened the proceeding to admit additional evidence, reversed its prior ruling, and granted Blecker's application for cancellation of the discharged judgments.

Upon appeal to the court of appeals, the sole issue presented by the respondents was whether the trial court granted Blecker's motion on an improper ground under C.R.C.P. 59(a).[2] None of the parties suggested that the petitioner had not filed his motion for a new trial within the time allowed by C.R.C.P. 59(b). The parties briefed the Rule 59(a) issue and presented oral arguments to the court of appeals. After the case was submitted for decision, the court of appeals at its own instance raised the issue of whether the petitioner's Rule 59(a) motion had been timely filed, and issued an order to show cause why the trial court's ruling on rehearing cancelling Kofoed and Costello's judgment against Blecker should not be vacated. Thereafter, the court of appeals reversed the trial court on the ground that the petitioner's new trial motion had not been timely filed and, therefore, the trial court had lacked jurisdiction to overturn its earlier order denying Blecker's motion to cancel the respondents' judgment against him. See Schuster v. Zwicker, 659 P.2d 687 (Colo.1983); National Account Systems, Inc. v. District Court, 634 P.2d 48 (Colo.1981).

■ We accepted certiorari to determine whether the court of appeals erred in concluding that the trial judge did not intend to extend the permissible time for filing post-trial motions when he offered and granted a thirty-day stay to the petitioner. We hold that the language of the thirty-day stay order was ambiguous. This fact is evinced by the interpretation ascribed to the order by all the interested parties as contrasted with the interpretation given by the court of appeals. The respondents, Kofoed and Costello, were experienced attorneys who had a significant financial inter-

1. Prior to Blecker's bankruptcy action, Kopy Kats had changed its name to Great American Printing Co. The bankruptcy proceedings listed Great American Printing Co., but not Kopy Kats, as a creditor. The issue before the trial court in the present proceeding was the adequacy of the proof to establish that discharge of debts owed by Blecker to Great American Printing Co. also effected discharge of the Kopy Kats judgment.

2. While both parties treated the motion for reconsideration or new trial as one under C.R.C.P. 59(a), they differed as to the applicable subsection of that rule. The respondents in-

sisted that the motion should be denied under C.R.C.P. 59(a)(4) (newly discovered evidence), because the evidence submitted at the second hearing was not newly discovered. The petitioner disagreed and argued that the motion should be granted under C.R.C.P. 59(a)(1) (irregularity in trial proceedings). The trial court accepted the petitioner's position and considered the motion under C.R.C.P. 59(a)(1). In the court of appeals, the respondents' sole argument was that the motion should have been considered one submitted under C.R.C.P. 59(a)(4).

est in this action; yet, they made no objection to the timeliness of the petitioner's Rule 59(a) motion during the post-trial or the appellate proceedings. Similarly, the trial judge, who entertained and then granted the petitioner's Rule 59(a) motion, did not register any concern about the timeliness of that motion. This indicates that the trial participants assumed that the stay allowed the petitioner additional time to file a motion under C.R.C.P. 59(a).

To the contrary, the court of appeals concluded that the terms "stay" and "extension of time" are terms of art with mutually exclusive meanings. In its opinion, the court of appeals relied on specific language from appellate opinions and from C.R.C.P. 6(b) in concluding that a stay could not apply to Rule 59(a) motions. Rather, the court of appeals held that all the trial court had granted was a stay of execution of the respondents' judgment against the petitioner.

▪ When an order is ambiguous, the task of the reviewing court is to determine what the trial judge intended in issuing the order. To resolve an ambiguity, it is appropriate to refer to the entire record and to the circumstances surrounding the order. *Union Pacific Railroad Co. v. Mason City & Fort Dodge Railroad Co.,* 222 U.S. 237, 247, 32 S.Ct. 86, 56 L.Ed. 180 (1911); *Security Mutual Casualty Co. v. Century Casualty Co.,* 621 F.2d 1062, 1066 (10th Cir.1980); *Harrigan v. Mason & Winograd, Inc.,* 121 R.I. 209, 212–13, 397 A.2d 514, 516 (1979); *Lone Star Cement Corp. v. Fair,* 467 S.W.2d 402, 404–05 (Tex.1971); 60 *C.J.S. Motions and Orders* § 64 (1969). Since the same rules of interpretation apply in ascertaining the meaning of an ambiguous court order as in interpreting any other ambiguous writing or instrument, *Gardner v. Rich Mfg.*

*Co.,* 68 Cal.App.2d 725, 158 P.2d 23 (1945); *Bailey v. Superior Court,* 142 Cal.App.2d 47, 297 P.2d 795 (1956); *Lone Star Cement Corp. v. Fair, supra,* it is proper to apply those principles used to construe unclear contract terms in determining the intent of the parties. One of the most reliable indications of the true intent of the parties to a contract is their behavior and interpretation of the contract before a controversy arises. *Nahring v. City and County of Denver,* 174 Colo. 548, 484 P.2d 1235 (1971); *Western Motor Rebuilders, Inc. v. Carlson,* 138 Colo. 404, 416–17, 335 P.2d 272, 279 (1959); *Smith v. Long,* 40 Colo.App. 531, 533, 578 P.2d 232, 234 (1978).[3] Further, an appellate court should, under proper rules of construction, construe an ambiguous order to arrive at a result that is as fair and reasonable as possible rather than one that is harsh and unreasonable. *Hendrie v. Lowmaster,* 152 F.2d 83, 85 (6th Cir.1945); *Hutchinson v. Elder,* 140 Colo. 379, 344 P.2d 1090 (1959); *M.R. Mansfield Realty, Inc. v. Sunshine,* 38 Colo.App. 334, 561 P.2d 342 (1976), *aff'd,* 195 Colo. 95, 575 P.2d 847 (1978).

▪ Here, the term "stay" was not suggested by counsel but was employed by the judge in an oral ruling from the bench. The order was never reduced to *writing.* The litigants, counsel for the litigants, and the trial judge all conducted themselves as if the stay order included an extension of time to file post-trial motions. Even on appeal, the respondents and their counsel did not suggest a different meaning. Under these circumstances, we hold that the technical meaning ascribed to "stay" by the court of appeals is inappropriately restrictive and that the stay order should be construed to give effect to the demonstrated understanding of the parties and intent of the trial judge.[4]

---

**3.** In a case analogous to our own, the Supreme Court of Texas reversed a lower court's construction of a judicial order, stating, "[w]e hold that the order and record considered as a whole as well as the conduct of the parties and trial court subsequent to the order dictate a construction contrary to that of the Court of Civil Appeals." *Lone Star Cement Corp. v. Fair, supra,* 467 S.W.2d at 405.

**4.** Our disposition of this case makes it unnecessary to consider the appropriateness of a remand for clarification, which the petitioner asserts would be permissible under C.A.R. 10(e), or the petitioner's alternative suggestion that interrogatories be directed to the trial judge. We also have no need to consider the applicability of *Converse v. Zinke,* 635 P.2d 882 (Colo.

We reverse the judgment of the court of appeals and direct that the case be returned to that court for resolution of the respondents' appeal on its merits.[5]

1981), relied on by the petitioner as an alternative ground for relief.

5. The issue on appeal from the trial court was briefed and argued in the court of appeals. It appears ripe for determination in that court. The merits of the appeal from the trial court's judgment were not addressed in the briefs or argument in the Colorado Supreme Court. Therefore, judicial economy would not be served by retaining the case in the supreme court for decision on the merits.