**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**DEC 18 2000**

**PATRICK FISHER**
**Clerk**

In re: FRANK MARION CHELF, JR.,
AND DAVID ALAN CHELF,

    Debtors,

----------------------

EMPIRE GAS CORPORATION;
SALGAS INC. OF CRESTED
BUTTE,

    Appellants,

v.

HAROLD CLIFTON GOSS, as
Liquidating Trustee of the Frank M.
Chelf, Jr. Liquidating Trust and David
A. Chelf Liquidating Trust; ROXIE
LYPPS; H. CLIFTON GOSS; DONA
GOSS; EDWARD CLARK
GILLESPIE, JR.; VASTENE SILVA;
WILLIAM DAVID SMITH; JAMES P.
SCOTT; COLLEEN RAFFERTY,
Creditors,

    Appellees.

No. 99-1539
(D.C. No. 96-M-671)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

---

    [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **BRORBY**, **MCWILLIAMS**, and **KELLY**, Circuit Judges.

Appellants Empire Gas Corporation and Salgas, Inc. of Crested Butte appeal from the district court's disallowance of their bankruptcy claims against the estate of Frank and David Chelf. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm. [1]

Background

The parties are familiar with the facts and the procedural history of this case. We will therefore refer to the facts and procedural history only as is necessary for our analysis. The appellees in this case are the trustee and certain creditors who objected to Empire's bankruptcy claims against the Chelfs' estate (the "Objecting Parties").

On appeal, Empire asserts that the district court's disallowance of its bankruptcy claims was erroneous because (1) the Colorado Court of Appeals determined that Empire's claim for indemnity was valid,      (2) Colorado law

---

[1]The procedural history of this case includes actions brought by and against not only the Chelfs as individuals, but also two corporations of which the Chelfs were majority shareholders and Chelf Enterprises, a partnership of which the Chelfs were partners. For the sake of convenience, we refer to these entities and the Chelfs collectively as "the Chelfs." Similarly, the procedural history of this case involves not only Empire, but several Empire subsidiaries. We refer to these entities collectively as "Empire."

entitles Empire to seek indemnification for the settlements it reached, (3) the doctrine of collateral estoppel precluded the district court from ruling that the Chelfs were not liable because the Chelfs' liability was determined in the Goss trial, and (4) in the alternative, Empire's claims should have survived summary judgment. We address each argument in turn.

### Discussion

We review the district court's grant of summary judgment de novo. Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999), cert denied, 120 S. Ct. 53 (1999). Contrary to the Objecting Parties' contention, the standard is not one of clear error. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. (quoting FED. R. CIV. P. 56(c) (2000)). This standard applies to bankruptcy proceedings. FED. R. BANKR. P. 7056. "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Simms, 165 F.3d at 1326.

"A claim cannot be allowed [under 11 U.S.C. § 502(b)(1)] if it is

unenforceable under nonbankruptcy law." In re G.I. Indust., Inc., 204 F.3d 1276, 1281 (9th Cir. 2000) (quoting In re S. Cal. Plastics, Inc., 165 F.3d 1243, 1247 (9th Cir. 1999)) (internal quotations omitted); see also 4 COLLIER ON BANKRUPTCY § 502.03[2][b][ii]. "A trustee is therefore allowed to raise any state law defenses to the claim." In re G.I. Indust., Inc., 204 F.3d at 1281. Accordingly, we must resolve whether Empire's claims were enforceable under Colorado law.

The Colorado Court of Appeals' Decision

The state appellate court held that the plain language of the asset purchase agreement required the Chelfs to indemnify Empire for all of the Chelfs' liabilities, if any such liabilities existed. II Aplt. App. at 472. Empire argues that in light of this decision and under the law of the case doctrine, the district court should have held that Empire was entitled to indemnification, presumably for the settlements, Cox judgment, and remediation expenses. Aplt. Br. at 20 ("In this case, the Colorado Court of Appeals determined that Empire/Salgas is 'entitled to indemnification for the sellers' liabilities. . . .'" Thus, the District Court's ruling to the contrary is erroneous."). We disagree. Empire misconstrues the state appellate court's holding. The court held that Empire's rights under the indemnification agreement included all of the Chelfs' liabilities. However, the court did not reach the issue before us: whether the Chelfs are in fact liable for

the settlements, Cox judgment, and remediation expenses. Thus, even assuming that the district court was bound by law of the case (an issue we need not address), the state appellate court decision itself affords no basis upon which the Chelfs' liability can be quantified for these expenses, if any such liability exists.

Presumably in the alternative, after conceding that the state appellate court never ruled upon the extent of the Chelfs' liability, Empire argues the state district court " would have" allocated fifty percent liability to the Chelfs had the Chelfs not filed for bankruptcy. Aplt. Reply Br. at 9. Empire points to the appellate court rejecting Empire's contribution claim by relying upon the jury's findings in the Goss trial and the Chelfs' request that the appellate court take judicial notice of the Goss trial results. We decline to speculate as to how the state court would have ruled.

Indemnification for Settlements under Colorado Law

Under the asset purchase agreement, Empire is entitled to indemnification only for amounts paid for the Chelfs' liabilities. I Aplt. App. at 142. The settlement agreements Empire entered into with several plaintiffs before the Goss trial (the "Settling Plaintiffs") settled only Empire's liability for the Settling Plaintiffs' injuries. Id. at 286, 300, 308, 317. The Settling Plaintiffs reserved the right to prosecute their claims against the Chelfs and the Chelf Entities. Id. at 287, 300, 309, 317. Accordingly, because Empire did not pay the Settling

Plaintiffs for the Chelfs' liability, Empire is not entitled to indemnification.

For this same reason, <u>Burlington Northern R.R. Co. v. Stone Container Corp.</u>, 934 P.2d 902 (Ct. App. 1997), is distinguishable. In that case, the settlement for which indemnification was sought "expressly included <u>any</u> claims" the injured party had. <u>Id.</u> at 904 (emphasis added). Therefore, the settlement encompassed not only the settling party's liability, but also the liability of any other responsible party. By way of contrast and as explained above, Empire reached settlement only with regard to its <u>own</u> liability for the plaintiffs' injuries. Even if the Goss judgment established that the Chelfs were liable for fifty percent of the Settling Plaintiffs' injuries (or ninety percent for that matter), Empire cannot obtain indemnification from the Chelfs under a theory of collateral estoppel because the settlement agreements addressed only Empire's liability, not the Chelfs'. Finally, even assuming some precedential value, the Florida Court of Appeals' decision in <u>Hyatt Legal Serv's v. Ruppitz</u>, 620 So.2d 1134 (Fla. Ct. App. 1993), upon which Empire relies is factually inapposite to the case at bar.

<u>The Cox Judgment</u>

With respect to the Cox judgment, the district court concluded that Empire "waived its right to seek indemnification from the Chelf[s] by agreeing to accept sole liability for compensatory damages in exchange for the avoidance of exposure to punitive damages in the Cox trial." II Aplt. App. at 699. We agree.

As explained, Empire is entitled to indemnification only if it paid for the Chelfs' liabilities. I Aplt. App. at 142. Because the Chelfs were dismissed as defendants and Empire confessed liability in a pre-trial stipulation, id. at 327, Empire paid compensatory damages to the Cox plaintiffs only for its own liability. Id. at 332. Empire is therefore not entitled to indemnification for the Cox judgment. For this same reason, the Goss judgment provides no basis for assigning liability for the Cox judgment to the Chelfs under a theory of collateral estoppel.

Remediation Expenses

With respect to Empire's claim of indemnification for remediation expenses, the district court held that the "costs incurred by Empire were directly in response to the PUC order. The Chelfs and Chelf entities were not then subject to the jurisdiction of the PUC." II Aplt. App. at 699. We agree.[2] The remediation orders "required solely Empire . . . to remove saturation of propane gas." Id. at 487. Therefore, as Empire is entitled to indemnification only for expenses paid for the Chelfs's liability, the remediation orders provide no basis for indemnification.

The district court's holding is not "in conflict with environmental indemnity claims being upheld across the country." Aplt. Br. at 25 (citing Kerr-

---

[2]Because the parties did not include the remediation order in the record, we rely solely upon the parties' Stipulation of Facts relating to the remediation order. II Aplt. App. at 486-87.

McGee Chemical Corp. v. Lefton Iron & Metal Co., 14 F.3d 321, 327-28 (7th Cir. 1994)). Granted, CERCLA permits an action for contribution against liable or potentially responsible persons, 42 U.S.C. § 9613(f)(1); Tosco Corp. v. Koch Indust., Inc., 216 F.3d 886, 891-93 (10th Cir. 2000), and the action may be brought in a bankruptcy case. Al Tech Specialty Steel v. Allegheny Int'l Credit Corp., 104 F.3d 601 (3d Cir. 1997). Empire's indemnification claim fails, however, for the simple reason that Empire did not seek contribution under CERCLA and the indemnification agreement under which it seeks recovery provides no basis for indemnification absent an allocation of liability to the Chelfs. For these same reasons, Kerr-McGee is not dispositive. Unlike the plaintiff in Kerr-McGee, Empire does not seek indemnification under CERCLA. Furthermore, indemnification under the indemnity agreement at issue in Kerr-McGee was not dependent upon the indemnitor's liability. The indemnitor agreed to indemnify the indemnitee for expenses " however the same may be caused." [3] 14 F.3d at 37 (emphasis added). We therefore turn to the final basis upon which Empire seeks indemnification: collateral estoppel.

---

[3] The agreement provided in part that the indemnitor would indemnify the indemnitee for "any and all claims, damages, judgments, fines, penalties, assessments, losses, expenses . . . , however the same may be caused, arising out of or resulting from . . . (b) the maintenance of any action, claim or order concerning pollution or nuisance . . . ." Kerr-McGee, 14 F.3d at 327 (emphasis added).

Empire's attempt to utilize the Goss judgment to establish the Chelfs' liability under a theory of collateral estoppel is equally unavailing. The case management order expressly prohibited the assertion of collateral estoppel in proceedings subsequent to the Cox trial: "Trial of each and all of [the] other remaining plaintiffs' claims shall be held on February 3, 1992, and immediately thereafter as necessary until completion of     all matters ." I Aplt. App. at 274 (emphasis added). Given the foregoing language, the reference to the "second trial proceeding," should not be construed as allowing assertions of collateral estoppel in proceedings that might follow the second trial. We look to the entire order to determine the parties' intentions.      Blecker v. Kofoed  , 672 P.2d 526, 528 (Colo. 1983) (en banc) ("[S]ame rules or interpretation apply in ascertaining the meaning of an ambiguous court order as in interpreting any other ambiguous writing or instrument . . . ");      Concerning the Application for Water Rights of the Town of Estes Park v. Northern Colorado Water Conservancy Dist.      , 677 P.2d 320, 326 (Colo. 1984) (en banc) ("In order to determine intent, a contract must be construed as a whole . . . "). The order clearly encompasses all remaining matters including the Chelfs' claim on the promissory note and non-competition agreement as well as Empire's counterclaims.

Therefore, upon consolidation with the Goss and Cox plaintiffs' action, the Chelfs' claims and Empire's counterclaim for indemnification necessarily became

subject to the case management order. Had Empire prosecuted its counterclaim before the Chelfs filed for bankruptcy, Empire could not have asserted collateral estoppel on the basis of the Goss judgment. It would therefore be anomalous to allow Empire to rely upon the Goss judgment to establish the Chelfs' liability for remediation expenses once the Chelfs filed for bankruptcy.

Summary Judgment

In the alternative, Empire argues that summary judgment was improper because the extent of the Chelfs' liability was a genuine issue of material fact. Aplt. Br. at 34. We disagree. As explained, the settlement agreements, Cox judgment, and remediation orders relate only to Empire's liability. Furthermore, the Goss judgment provides no basis for allocating liability to the Chelfs for Empire's remediation expenses. Contrary to Empire's contention, Empire assumed no liabilities of the Chelfs. There is therefore no dispute as to the extent of the Chelfs' liability for these expenses.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

- 10 -